**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **AMY R.**,<br><br>          *Plaintiff,*<br><br>     v.<br><br>**COMMISSIONER OF SOCIAL SECURITY**,<br><br>          *Defendant*. | No. 25-cv-04478<br><br>**OPINION** |

<u>**APPEARANCES**</u>:

**Jennifer Lilley Stonage**
**Richard Lowell Frankel**
Bross & Frankel
725 Kenilworth Avenue, Suite 2
Cherry Hill, NJ 08002

     *On behalf of Plaintiff.*

**Andrew Charles Lynch**
Social Security Administration
Law & Policy, Program Litigation 3
6401 Security Boulevard
Baltimore, MD 21235

     *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Amy R.'s[1] ("Plaintiff") second appeal from a denial of Social Security benefits by the Commissioner of Social Security ("Commissioner"). (ECF No. 4). The Court heard argument on May 26, 2026, and entered an Order reversing the Commissioner's decision and awarding benefits. (ECF No. 18). This Opinion supplements the Court's Order.

## I.    BACKGROUND

The Court recites only those facts necessary for its determination.

### A.  Administrative History

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on February 20, 2017, alleging disability beginning November 30, 2014. (AR 728–29). Her claims were denied initially on July 29, 2017, and upon reconsideration on October 6, 2017. (AR 19). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.*).

The ALJ held a hearing on June 10, 2019. (AR 19). Plaintiff appeared and testified, and a vocational expert ("VE") testified. (*Id.*). On September 11, 2019, the ALJ issued an unfavorable decision, finding Plaintiff not disabled within the meaning of the Social Security Act. (AR 728). Plaintiff sought review before the Appeals Council, which denied her request on July 30, 2020, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–6).

Plaintiff filed an appeal in this District. On July 29, 2021, the Hon. Noel L. Hillman (Ret.) entered a consent order reversing the Commissioner's decision and remanding the matter for

---

[1]  Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

further administrative proceedings pursuant to 42 U.S.C. § 405(g). (AR 715–16). On October 13, 2021, the Appeals Council vacated the Commissioner's final decision and remanded the case to the same ALJ. (AR 719–22).

The Appeals Council's remand order identified several deficiencies in the prior administrative decision. (*Id.*). Relevant here, the Council specifically noted that, although the ALJ found Plaintiff's irritable bowel syndrome ("IBS") to be a severe impairment, the ALJ did not adequately explain how that impairment affected Plaintiff's functioning or how unremarkable abdominal findings in the record negated Plaintiff's reports of IBS symptoms, bathroom frequency, and interstitial cystitis. (AR 720). The ALJ was directed to further evaluate Plaintiff's alleged symptoms, including the limiting effects of Plaintiff's IBS and related impairments. (AR 721).

On remand, the ALJ consolidated Plaintiff's 2017 applications with subsequent Title II and Title XVI applications filed in 2020. (AR 728–29). The ALJ held a second hearing on October 16, 2023, at which Plaintiff again appeared and testified. (AR 728). At this second hearing, a different VE testified. (*Id.*).

On November 22, 2023, the ALJ issued a second unfavorable decision. (AR 728–58). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Pl.'s Br., ECF No. 8 at 6). Plaintiff then commenced this action seeking judicial review under 42 U.S.C. § 405(g).

**B.  Plaintiff's Background and Testimony**

Plaintiff was born on November 5, 1972. (AR 756). She was forty-two years old on her alleged disability onset date of November 30, 2014, and later changed age categories to an

individual closely approaching advanced age. (*Id.*). Plaintiff has at least a high school education and past relevant work as a fashion designer and design department manager. (AR 756–57).

Plaintiff alleges disability based on a combination of physical and mental impairments, including degenerative disc disease, adhesive capsulitis affecting both shoulders, IBS, interstitial cystitis, major depressive disorder, and post-traumatic stress disorder ("PTSD"). (AR 731).

Relevant here, with respect to her IBS and interstitial cystitis symptoms, Plaintiff testified at the 2019 hearing that she experienced intense stomach pain due to severe constipation, that her stomach became distended, and that she needed laxatives to move her bowels. (AR 63–64, 737). She described bowel movements as painful and accompanied by colon spasms, gas, and sweating. (*Id.*). She further testified that she could not fully empty her bladder and experienced a burning sensation similar to a urinary tract infection that "will never go away." (*Id.*).

At the post-remand hearing on October 16, 2023, Plaintiff testified that her condition had worsened. She stated that she had ongoing pain, constipation, and other stomach issues, and that a colonic bag had been recommended. (AR 737). She testified that she used the bathroom frequently, approximately every thirty to forty-five minutes, and that each time she could be in the bathroom for fifteen minutes to more than an hour. (AR 697, 704, 737–38). She also testified that she used sanitary pads and sometimes needed assistance getting from the bathroom back to bed. (AR 738).

At the 2019 hearing, the VE testified that an individual who was off task more than five percent of the workday, in addition to ordinary breaks, would be unable to find work. (AR 82). At the 2023 hearing, the VE testified that if an individual would be off task for fifteen percent or more of the workday that would be work preclusive. (AR 709–10).

### C. Medical History

Given the extensive administrative record in this case, the Court will briefly summarize the

relevant medical evidence for purposes of this appeal. This recitation is not comprehensive and does not address all of Plaintiff's alleged impairments.

With respect to Plaintiff's IBS and gastrointestinal symptoms, treatment records document complaints of chronic constipation, abdominal distention, and gas-related pain. In October 2018, Anthony Albert-Puleo, M.D., referred Plaintiff to a gastroenterologist. (AR 486). Plaintiff reported that, despite increasing lactulose, she had not experienced significant improvement in her constipation and had increased left lower quadrant cramping. (*Id.*). On examination, she had abdominal tenderness. (AR 487). She was diagnosed with abdominal distention, gas pain, and IBS with constipation. (*Id.*). Plaintiff reported in February 2019 that, despite laxative use, she was still experiencing constipation, abdominal distention, gas-like discomfort, and anal leakage. (AR 617). A March 2019 colonoscopy showed a diffuse area of moderate melanosis in the colon and non-bleeding internal hemorrhoids. (AR 589).

Later medical evidence continued to document bowel-related symptoms and abnormal findings. A November 2021 visit documented prior anorectal manometry showing obstructive defecation with paradoxical contractions. (AR 1277). Plaintiff continued seeking treatment from gastrointestinal specialists at Jefferson Health, and those records noted moderate abdominal distention and hypoactive bowel sounds. (AR 1197, 1201, 1209). Plaintiff also sought treatment at Cooper Digestive Health Institute for chronic idiopathic constipation, obstructive defecation, abdominal distension and pain, and small intestinal bacterial overgrowth ("SIBO"). (AR 1251). At a February 2022 exam, her abdomen was again noted to be distended. (AR 1259). Colon x-rays in July 2022 showed a moderate-to-severe stool load, while a sitz-marker study showed markers throughout the colon, consistent with colonic motility. (AR 743, 1133, 1201).

Plaintiff's urinary symptoms were also documented throughout the record. In September

2018, Plaintiff presented to Delaware Valley Urology with a history of pelvic floor spasms for approximately ten years, with increased spasms over the preceding weeks. (AR 495). She reported a sense of incomplete bladder emptying and was diagnosed with chronic interstitial cystitis. (AR 495–96). Her urinary and pelvic symptoms required physical therapy aimed at improving sleep, decreasing pain, and managing frequent urination. (AR 503).

The record also reflects more invasive urinary treatment. On July 27, 2021, Plaintiff underwent cystoscopy with bladder overdistension, bladder instillation, and biopsy. (AR 898). Two days later, she complained of bladder pain and underwent a "voiding trial" involving catheterization for release of urine. (AR 1058). A related procedure was performed again on August 3, 2021. (AR 1059). Despite these procedures, Plaintiff continued to report burning and pain. (AR 1066). She was also diagnosed with myalgia of the pelvic floor. (AR 1070).

Plaintiff's treating providers connected these conditions to functional limitations in medical source statements. In 2019, Kristine Sweeney, APN, noted Plaintiff's IBS and interstitial cystitis, among other conditions, and reported that she experienced frequent bowel movements that were at times uncontrollable. (AR 581–83).[2] She opined that Plaintiff's IBS could cause her to be off task twenty-five percent or more of the workday and absent more than four days per month. (AR 584–86). In 2023, Dr. Albert-Puleo and Lori Proi, FNP, noted symptoms including fecal urgency, abdominal distension and pain, anal fissures, and frequent and unpredictable bowel movements. (AR 1663–64).[3] They further opined that Plaintiff would require at least seven

---

[2] Although Plaintiff's brief attributes this opinion to Dr. Albert-Puleo, (ECF No. 8 at 12–13), it appears to be signed by Nurse Sweeney, who worked with Dr. Albert-Puleo, and the ALJ referred to it as Sweeney's opinion. (AR 751). Accordingly, the Court will also consider this record as Nurse Sweeney's opinion.

[3] The ALJ referred to this record as a joint opinion of both providers and so the Court does as well. (*See* AR 751).

6

unscheduled restroom breaks per day, lasting at least fifteen to twenty minutes each. (AR 1666).

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citations omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986) (citations omitted); *see also, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citation omitted). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the

record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) (citation omitted).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id*. The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citation omitted). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted).

## B.  Sequential Evaluation Process

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.

> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory

requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

On appeal, the plaintiff bears the burden of showing not merely that the ALJ erred, but that the error was harmful. *Peter G. v. Comm'r of Soc. Sec.*, No. 23-3797, 2024 WL 3518117, at *3 (D.N.J. July 24, 2024); *see also Holloman v. Comm'r Soc. Sec.,* 639 F. App'x 810, 814 (3d Cir. 2016).

## III. **ALJ DECISION**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 30, 2014. (AR 731).

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, adhesive capsulitis, IBS, interstitial cystitis, major depressive disorder, and PTSD. (AR 731). The ALJ found other conditions, including COVID infection and alcohol dependence, non-severe. (AR 731–32).

9

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment. Relevant here, the ALJ found that IBS and interstitial cystitis did not meet or equal any listing under Categories 5.00 or 6.00. (AR 732–33).

Before proceeding to step four, the ALJ assessed Plaintiff's RFC and found that she could perform a reduced range of light work with physical and mental limitations. (AR 736). In doing so, the ALJ acknowledged Plaintiff's testimony about her frequent and prolonged bathroom use. (AR 737–38, 747). He further acknowledged the opinions of Plaintiff's treating providers, Dr. Albert-Puleo and Nurses Proi and Sweeney, which, as explained above, indicated that Plaintiff required frequent restroom breaks and ready access to a bathroom. (AR 751–52).

The ALJ nevertheless declined to include any limitation for restroom access, unscheduled breaks, off-task time, or absenteeism. The ALJ reasoned that Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms was not entirely consistent with the record, citing what he characterized as "conservative, albeit multi-form course of treatment," including the lack of documented use of a colonic bag, no emergency-room visits or hospitalizations, and some relatively normal examination findings. (AR 738–44). The ALJ acknowledged the abnormal gastrointestinal and urinary findings, including abdominal tenderness and distention, obstructive defecation with paradoxical contractions, moderate-to-severe stool load, and cystoscopy findings. (AR 740–43). But he emphasized that a 2019 colonoscopy showed only moderate melanosis and non-bleeding hemorrhoids with an otherwise normal study; that a sitz-marker study showed markers throughout the colon consistent with colonic motility; and that a bladder biopsy showed "no significant" inflammation of the urothelial mucosa. (AR 743). With respect to the medical opinions in the record, the ALJ gave them little weight, again reasoning that "the record fails to reveal a repeated pattern of emergency room presentation or hospitalizations;

10

exam findings of atrophy, contracture, cogwheeling motor deficits, or any noted pain behaviors upon exam … ." (AR 751–52).

The ALJ ultimately concluded that the record evidence did not support limitations to provide additional time for "restroom use, restroom access, off task or work absence limitations." (AR 749). Instead, the ALJ concluded that Plaintiff's gastrointestinal and urinary symptoms were accounted for by the overall RFC and limitations therein. (*See* AR 744, 748–49).

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a fashion designer or design department manager. (AR 756).

At step five, relying on the VE testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, including mail sorter, hand packager, and ticket tagger. (AR 757–58). The ALJ therefore concluded that Plaintiff was not disabled from November 30, 2014, through the date of the decision. (AR 758).

## IV. DISCUSSION

In her appeal, Plaintiff makes two principal arguments: 1) that the ALJ failed to comply with the remand order and properly consider Plaintiff's IBS and interstitial cystitis in formulating her RFC; and 2) the ALJ failed to assign proper weight to the opinions of treating physicians when evaluating Plaintiff's other impairments. As explained below, because the Court agrees with Plaintiff's first argument[4]—and the Commissioner concedes that remand would be appropriate on

---

[4] Plaintiff argues that the failure to comply with the remand order is itself reversible legal error. (Pl.'s Br., ECF No. 8 at 25 (citing cases)). While that is correct when a district court remands with specific instructions, *see Sullivan v. Hudson*, 490 U.S. 877, 886 (1989), here the remand instructions came from the Appeals Council, and courts have been divided over whether the failure to comply with a remand order of the Appeals Council itself is reversible legal error. *See Mor v. Kijakazi*, No. 21-1730, 2022 WL 73510, at *6 (D.N.J. Jan. 7, 2022). Although the Commissioner did not dispute this point, because the Court finds the ALJ's decision is not supported by substantial evidence, it need not decide whether the failure to comply with the Appeals Council remand order is reversible error standing alone.

this issue—it need not and does not reach Plaintiff's second argument. The Court further finds that a second remand would be grossly unfair to Plaintiff and an inadequate remedy such that a direct award of benefits is appropriate.

### A. The ALJ Failed to Comply with the Remand Order and the RFC Determination Is Not Supported by Substantial Evidence

Plaintiff first argues that the ALJ failed to comply with the Appeals Council's remand order and did not sufficiently consider the limiting effects of her IBS and interstitial cystitis in formulating the RFC. (Pl.'s Br., ECF No. 8 at 24–30). The Court agrees.

When this case was previously remanded, the Appeals Council identified a specific deficiency in the ALJ's first decision: although the ALJ had found Plaintiff's IBS to be a severe impairment, he did not explain how that impairment affected Plaintiff's functioning. The Appeals Council further noted that the ALJ had relied on relatively unremarkable abdominal findings but had not explained "how those unremarkable findings negated the claimant's reports of IBS symptoms, bathroom frequency and interstitial cystitis." (AR 720). The Appeals Council therefore specifically directed the ALJ, on remand, to evaluate Plaintiff's alleged symptoms, including the limiting effects caused by the claimant's IBS and related impairments, and to reconsider Plaintiff's RFC with appropriate rationale and specific references to the record. (AR 721).

On remand, the ALJ acknowledged the issue somewhat more directly. He found both IBS and interstitial cystitis to be severe impairments—which necessarily means that he found they significantly limited Plaintiff's ability to work. He also acknowledged Plaintiff's testimony regarding her symptoms and her need to use the bathroom frequently and for prolonged periods, as well as the medical opinions consistent with her testimony. Nevertheless, he made no assessment or consideration of how those symptoms impacted Plaintiff and again formulated an

RFC that contained no limitation for restroom access, unscheduled breaks, off-task time, or absences.

In doing so, the ALJ did little more than summarily recite the above-noted testimony and opinions as well as the medical evidence. The ALJ again failed to provide any explanation as to what, if anything, in the record contradicts Plaintiff's testimony and the opinions of her treating providers that she required frequent and lengthy restroom breaks resulting in a substantial period of off-task time. The ALJ's reasoning, or lack thereof, was virtually the same as in his previous decision; he again relied on a few unremarkable exam findings as well as a lack of extreme treatment measures. The Commissioner concedes that the first and second decisions of the ALJ in this regard are essentially indistinguishable. (Tr. at 6:10–14, 7:4–8, 10:4–8). Thus, as the Appeals Council previously indicated, there remains a lack of adequate analysis or explanation in this regard.

The medical record contains significant evidence consistent with Plaintiff's alleged impairments. Plaintiff has long sought treatment for IBS and related symptoms, including seeing gastrointestinal specialists. With respect to her urinary symptoms, the record likewise documents Plaintiff's longstanding complaints of frequent urination and difficulty emptying her bladder. Consistent with this evidence, her treating providers opined that Plaintiff needed ready restroom access, required unscheduled breaks, would be off task, and would be absent from work at a disabling level. Importantly, under the regulations applicable in this case, the opinions of a treating physician such as Dr. Albert-Puleo "are entitled to substantial and at times even controlling weight." *E.g.*, *Fargnoli*, 247 F.3d at 43 (citing 20 C.F.R. § 404.1527(d)(2)). And an ALJ may not disregard a medical opinion from a treating physician "based solely on his own amorphous impressions, gleaned from the record and from his evaluation of the claimant's credibility."

*Morales v. Apfel,* 225 F.3d 310, 318 (3d Cir. 2000) (cleaned up). Judges, including ALJs, "must be careful not to succumb to the temptation to play doctor" as "lay intuitions about medical phenomena are often wrong." *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990).

The ALJ acknowledged some of this evidence and these opinions but instead again pointed to evidence in the record which at best can be described as neutral, including a 2019 colonoscopy that revealed moderate melanosis of the colon and non-bleeding internal hemorrhoids "with an otherwise normal study," a sitz-marker study "consistent with colonic motility" and a biopsy showing "no significant inflammation of the urothelial mucosa." (AR 743). He further relied on the lack of extreme treatment such as use of a colonic bag or repeated hospitalization and a lack of observed pain behavior. (AR 738, 751–52). But despite the Appeals Council's specific direction to do so, he failed to explain how this evidence negated or contradicted the testimony of Plaintiff and her treating providers' opinions.

The Court easily concludes that substantial evidence does not support the ALJ's RFC determination. None of the evidence relied on by the ALJ contradicts Plaintiff's testimony or the opinions of her providers about her need for frequent and prolonged use of the restroom. Indeed, the sitz-marker study on which the ALJ relies states that while "colonic motility is at least somewhat present, [Plaintiff] still may benefit from surgery as she seems to be largely refractory to medical therapy." (AR 1201). This tends to support Plaintiff's testimony, not undermine it. Similarly, the colonoscopy revealed moderate melanosis—consistent with prolonged use of laxatives. In any event, the ALJ relied on this same colonoscopy in his previous decision, (AR 27), which, as explained above, the Appeals Council held was insufficient. The same is true here: a single, largely normal colonoscopy does not by itself contradict a need for frequent access to a

14

restroom.[5] Likewise, the fact that Plaintiff was not repeatedly hospitalized or did not use a colonic bag does not meaningfully address whether she needs to leave a workstation unpredictably to use the bathroom. *Cf. Wilson v. Astrue*, No. 07-0019, 2007 WL 4225507, at *9 (E.D. Pa. Nov. 28, 2007) ("Simply because Plaintiff is not pursuing a course of surgery does not mean that the level or frequency of his treatment is inconsistent with his complaints of pain and other symptoms."). Further, the record reflects that Plaintiff's urinary symptoms were so severe that she underwent catheterization, indicating that significant treatment was sought.

Other courts have remanded for similar deficiencies. Another court in this District remanded where the ALJ failed to address plaintiff's evidence of needing to use the bathroom at least ten times per day which, if credited, could support a finding that she was unable to work in the competitive labor market. *Williams v. Comm'r, Soc. Sec. Admin.*, No. 18-13465, 2019 WL 4574502, at *3 (D.N.J. Sept. 20, 2019). Another district court similarly remanded because the ALJ overlooked or misconstrued evidence concerning urinary frequency, leaving the court unable to conduct meaningful review of the RFC and symptom analysis. *Souris v. Comm'r of Soc. Sec.*, No. 20-00630, 2021 WL 2688480, at *9 (N.D. Ohio June 30, 2021). And the Fourth Circuit has also reached a similar conclusion, holding that an ALJ erred by failing to analyze whether the claimant's RFC was affected by her need to work near a restroom and take frequent bathroom

---

[5] The Commissioner points out that Plaintiff's gastroenterologist recommended a repeat colonoscopy in five years, suggesting a lack of urgency. (ECF No. 13 at 7 (citing AR 589); Tr. at 8:9–12). As an initial matter, the ALJ did not proffer this as a reason for discounting Plaintiff's testimony about her symptoms, and it is axiomatic that a court cannot consider the agency's post-hoc justifications offered in litigation. *E.g.*, *Dixon v. Astrue*, No. 08-269, 2010 WL 891239, at *6 n.4 (W.D. Pa. Mar. 8, 2010) ("[A] reviewing court may only consider the ALJ's decision on the grounds on which it was based without reading into it reasoning or conclusions which are not clearly stated."). Even if the Court were to consider this argument, it still does not contradict Plaintiff's testimony. Neither this Court nor the ALJ is qualified to speculate about the frequency at which colonoscopies are required or recommended.

breaks. *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 389 (4th Cir. 2021). These cases identify the same problem present here: where a limitation for restroom frequency is supported by testimony, medical evidence, and opinions—and may be outcome determinative as to disability—the ALJ must sufficiently explain why that evidence is credited or rejected.

In his brief, the Commissioner relies on the same evidence discussed above: the colonoscopy and sitz-marker study, a finding of no significant urothelial inflammation, and the absence of extreme treatment or hospitalization. But, as explained above, this evidence was either already rejected by the Appeals Council or, more importantly, does not contradict Plaintiff's testimony about her need for frequent restroom use and time spent in the restroom or the medical opinions consistent with her testimony. It does not explain why her IBS and interstitial cystitis—both of which the ALJ found to be severe—should impose no workplace limitation at all.

The Commissioner also argues that the ALJ was entitled to rely on not only what the record says, but "what it does not say." (Def.'s Br., ECF No. 13 at 8 (citing *Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95 (3d Cir. 2004)). But the cited cases merely stand for the obvious point that an ALJ can rely on a lack of objective medical evidence and opinions in finding no disability. *Lane*, 100 F. App'x at 95 ("Not one of Lane's treating physicians opined that she was unable to work, let alone meet the modest demands of sedentary work. This lack of medical evidence is very strong evidence that Lane was not disabled."). Those cases do not support the Commissioner's argument that the ALJ properly relied upon a lack of emergency room treatment or other extreme interventions as necessarily contradicting Plaintiff's testimony and the opinions of her treating providers.

Indeed, at oral argument, counsel for the Commissioner ultimately conceded that at the very least a second remand would be appropriate given the similarities between the two ALJ

decisions. (Tr. at 10:9–14). The Commissioner concedes that the ALJ's second decision is virtually identical to the first with respect to its analysis of Plaintiff's IBS and interstitial cystitis. (Tr. at 6:10–12, 7:4–8, 10:4–8). As such, it necessarily failed to comply with the Appeals Council directive and cure the deficiencies identified therein. The Commissioner also does not dispute that if Plaintiff's testimony or any one of her providers' medical opinions were credited, the VE testimony would require a finding of disability. (Tr. at 13:7–12, 14:16–17:3). Indeed, the second VE testified that off-task time of fifteen percent or more would be work preclusive. Plaintiff testified that she needed to use the restroom approximately every thirty to forty-five minutes and that restroom use could last from fifteen minutes to more than an hour. Her treating providers, Dr. Albert-Puleo and Nurse Proi, opined that she would need at least seven restroom breaks lasting at least fifteen to twenty minutes each, i.e., about two hours out of a normal workday, and Nurse Sweeney further opined that she could be off task for twenty-five percent or more of the workday. Crediting any of those opinions or Plaintiff's testimony would exceed the VE's off-task threshold.

Accordingly, the RFC determination is not supported by substantial evidence and the ALJ failed to comply with the remand order of the Appeals Council. As explained above, while the substantial-evidence standard is highly deferential, evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace,* 722 F.2d at 1153. Here, the ALJ's decision is best described as a mere conclusion which is unsupported by substantial evidence. The ALJ again failed to meaningfully assess the undisputed evidence showing Plaintiff's need for frequent restroom use resulting in off-task time when formulating the RFC. Because that evidence is dispositive based on the VE testimony, the error is not harmless.

### B.  A Direct Award of Benefits Is Appropriate

Having determined that the ALJ's decision cannot stand—and the Commissioner having conceded that remand would ordinarily be appropriate—the Court must decide whether to remand for further administrative proceedings or direct an award of benefits.

In deciding whether to directly award benefits, a district court should consider 1) the delay in the case, including how long the case has been pending and the number of prior appeals and remands; and 2) whether the record has been fully developed and substantial evidence supports the finding of disability. *See, e.g.*, *Podedworny v. Harris*, 745 F.2d 210, 221–23 (3d Cir. 1984); *Morales*, 225 F.3d at 320; *Nunez ex rel. B.P. v. Kijakazi*, No. 23-1461, 2024 WL 1482613, at *8– 9 (D.N.J. Mar. 26, 2024); *Michelle R. Q. v. Bisignano*, 807 F. Supp. 3d 462, 475 (E.D. Pa. 2025). An award of benefits "is especially appropriate when the disability determination process has been delayed due to factors beyond the claimant's control." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 358 (3d Cir. 2008).

While the instances in which a court directly awards benefits are relatively sparse, those conditions are satisfied here. This case has been pending for an extraordinary length of time. Plaintiff filed her applications in February 2017, more than nine years ago. She has already proceeded through two administrative hearings, two ALJ decisions, Appeals Council review, and one prior federal-court remand. The delay alone weighs strongly against giving the Commissioner yet another opportunity to repair the same defect. The Commissioner estimates it would be at least six months to a year before Plaintiff would get a third hearing, let alone a decision and Appeals Council review. (Tr. at 18:2). As such, a remand would result in months if not years of additional delay for Plaintiff, which weighs in favor of a direct award of benefits. *See Allen v. Bowen,* 881 F.2d 37 (3d Cir. 1989) (awarding benefits after less than three years and no previous remand);

18

*Podedworny*, 745 F.2d at 223 (awarding benefits after five years and two ALJ decisions); *Brownawell*, 554 F.3d at 358 (awarding benefits after eight years and two ALJ decisions); *Morales*, 225 F.3d at 320 (awarding benefits after ten years and two ALJ decisions).[6]

The record (at this point spanning nearly 1700 pages) is also fully developed. On remand, the Appeals Council directed the ALJ to obtain additional evidence including consultative examinations, further evaluate Plaintiff's symptoms and opinion evidence, reconsider the RFC, and obtain supplemental vocational testimony if warranted. (AR 721–22). The ALJ received additional medical records and testimony from both Plaintiff and a new VE. There is no indication that additional medical evidence is necessary to resolve the dispositive issue. At most, according to the Commissioner, the ALJ could order a consultative examination with a gastrointestinal specialist, (Tr. at 15:24–16:2)—which the ALJ could have (and should have if deemed necessary) done after the previous remand.

Nor is this a case in which the Court must speculate about the vocational effect of the alleged impairment. As explained above, the Commissioner concedes that the limitations described in Plaintiff's testimony and the opinion of her treating providers, if credited, would exceed the VE's off-task threshold and require a finding of disability. *See Michelle R. Q.*, 807 F. Supp. 3d at 476 (awarding benefits where, if the ALJ had included a limitation consistent with the medical opinions in the record, no jobs would have existed based on the VE's testimony).

Allowing a third administrative proceeding would not serve the purpose of further developing the record; it would merely give the Commissioner another chance to supply a rationale that was required on remand but was inexplicably not provided. The Court declines to make

---

[6]   In determining the appropriate remedy, the Court considered whether an order for an expedited hearing would be an option. But the Commissioner disputed this Court's authority to do so and clearly stated any order in that regard would likely be appealed. (Tr. at 17:10–14).

Plaintiff wait any longer. *See Podedworny*, 745 F.2d at 223 ("If it would not be impossible for the Secretary to repair the record, it would at least be grossly unfair to give her another chance to do so under these circumstances.").

Indeed, the only reason the Commissioner could give for the Court not to award benefits is that the ALJ is the factfinder and should make that determination. (Tr. at 16:16–20). To be clear, the Court is not simply reweighing the evidence. Had the ALJ adequately explained his reasons for rejecting contrary testimony, medical evidence, and opinions in the RFC formulation, this Court would not disturb his findings. But when an ALJ fails twice to meet the minimal standard for articulating his decision, the Court may consider the record evidence an ALJ ignores or neglects to consider and award benefits so that the claimant does not need to endure additional administrative proceedings and the attendant delay. *See Morales*, 225 F.3d at 320 (awarding benefits because "the extensive medical record, wrongly rejected by the ALJ" was substantial evidence that the claimant is disabled); *Brownawell*, 554 F.3d at 358 (awarding benefits when the ALJ improperly rejected the opinions of treating physicians). As such, a direct award of benefits is the appropriate remedy.[7]

Accordingly, the Court will reverse the Commissioner's decision and remand solely for the calculation and award of benefits.

---

[7] The Commissioner notes that this case would be automatically assigned to a new ALJ on remand. (Tr. at 19:6–8). While that may make an additional remand appropriate in some cases where the proceedings have not been so prolonged and additional factfinding is necessary, here, as explained above, all the factors heavily weigh in favor of a direct award of benefits.

## CONCLUSION

For the foregoing reasons, the Court **REVERSES** the final decision of the Commissioner

and **REMANDS** solely for a calculation and award of benefits.

**CHRISTINE P. O'HEARN**
**United States District Judge**

DATED: June 12, 2026